# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR SANCHEZ-RIOS, O.B.O. MARIA I. SANCHEZ ) | No. CV 10-3480 AGR |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, ) Commissioner of Social Security ) | |
| Defendant. ) | |

Plaintiff Victor Sanchez-Rios ("Sanchez-Rios"), on behalf of Maria I. Sanchez ("Sanchez"), deceased,[1] filed a Complaint on May 10, 2010. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on May 26 and June 18, 2010. (Dkt. Nos. 9, 10.) On December 6, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court remands this matter to the Commissioner for proceedings consistent with this opinion.

///

///

---

[1] Sanchez passed away on March 31, 2009. *See* Attachment to Joint Stipulation.

# I.

# **PROCEDURAL BACKGROUND**

On May 2, 2006, Sanchez filed an application for disability insurance benefits. Administrative Record ("AR") 25. She alleged a disability onset date of October 8, 2004. *Id.* The application was denied initially. *Id.* Sanchez requested a hearing before an Administrative Law Judge ("ALJ"). AR 98. On September 11, 2007, the ALJ conducted a hearing at which Sanchez testified. AR 71-90. On November 7, 2007, the ALJ conducted a supplemental hearing at which a vocational expert ("VE") testified. AR 57-70. On January 14, 2008, the ALJ issued a decision denying benefits. AR 19-31. On February 19, 2008, Sanchez requested that the Appeals Council review the decision denying benefits. AR 18. On March 26, 2010, the Appeals Council denied the request for review. AR 1-3. This action followed.

# II.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

///

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Sanchez met the insured status requirements through December 31, 2009. AR 27. Sanchez has the medically determinable severe impairments of cervical spine strain/sprain syndrome; cervical radiculopathy; right shoulder internal derangement; right elbow tendonitis; and lumbar spine discopathy. *Id.* She has the residual functional capacity ("RFC") to perform light work with the following additional restrictions: "unable to perform overhead reaching; unable to perform repetitive activities with the upper extremities; unable to perform repetitive bending and stooping; and with the dominant, right upper extremity, unable to perform repetitive gripping and grasping activities." *Id.* The ALJ found that Sanchez was not able to perform any past relevant work, but there were jobs that existed in significant numbers in the national economy that she could have performed, such as counter clerk. AR 29-30.

### C. Medical Evidence

Sanchez-Rios contends "the ALJ erred with respect to his analysis of the medical evidence." JS 3. The precise nature of this claim is unclear because the argument only vaguely touches on a number of issues. Sanchez-Rios contends "[r]ecords show that [Sanchez's] diabetes mellitus was not well controlled;" "the ALJ did not have a medical expert at the hearing;" "the ALJ erred in his assessment of [Sanchez's] severe

orthopedic impairments;" "[t]he ALJ's residual functional capacity assessment is vague;" and "[t]he ALJ did not provide a proper hypothetical." JS 3.

### 1. Development of the Record

The Court construes the contentions regarding Sanchez's diabetes and the ALJ's failure to call a medical expert as an argument that the ALJ erred by failing to develop the record.

It is the claimant's duty to prove he or she is disabled. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *see* 42 U.S.C. § 423(d)(5)(A) (claimant must furnish medical and other evidence of his disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). The duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests. *Id.* "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60. This principle does not, however, allow a claimant to shift his burden of proving disability to the ALJ. *Id.* at 459.

When it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert or ordering a consultative examination. *See* 20 C.F.R. §§ 404.1519a, 416.919a. An ALJ must do so only if in light of the information already before the ALJ, "additional information [is] needed . . . ." 20 C.F.R. §§ 404.1519a(a)(1), 416.919a(a)(1).

Here, the ALJ had no duty to consult a medical expert or order a consultative examination regarding Sanchez's alleged diabetes. Sanchez-Rios cites blood test results from March 29, 2007 and September 25, 2007 to show that Sanchez's "diabetes mellitus was not well controlled." JS 3; AR 367, 372. These two test results indicate

Sanchez's glucose, serum was above range. AR 367, 372. In his Reply, Sanchez-Rios states that Sanchez's death certificate of March 31, 2009 shows the causes of her death were cardiopulmonary arrest, cardiac arrhythmia, hypertension and diabetes. JS 8 & Attachment.

In her Disability Report, Sanchez reported that issues with her upper back, lower waist, and neck limited her ability to work. AR 155. All of the medical treatment she listed was for back and neck problems and stress. AR 158-60. The medications she listed were for pain, muscle relaxation or nerves. AR 161. There was no indication from the Disability Report that Sanchez was claiming she could not work because of uncontrolled diabetes. AR 154-63. Further, none of the medical assessments prior to 2007 mentioned diabetes or stated Sanchez experienced limitations due to diabetes. AR 192-209, 213-56, 267-362.

At the hearing in September 2007, Sanchez asserted she had diabetes, but stated it was controlled by medication. AR 82. She listed "high sugar and cholesterol" on her Disability Report - Appeal after the initial denial of her claim for disability insurance benefits. AR 178. However, she stated "[t]he doctor cannot declare me as a diabetic [and] told [her] to lose weight." *Id.*

Under these circumstances, the ALJ had no duty to develop the record regarding diabetes. The evidence regarding Sanchez's alleged diabetes was not ambiguous and the record was not inadequate to allow for proper evaluation of the evidence. The ALJ did not err.

### 2. RFC Assessment

The Court interprets Sanchez-Rios' argument that the ALJ erred in his assessment of Sanchez's severe orthopedic impairments to mean that the ALJ erred in the RFC assessment. Sanchez-Rios argues the ALJ's assessment was vague because he did not define what "repetitive" means in terms of work activity. JS 3, 8.

The RFC determination measures a claimant's capacity to engage in basic work activities. *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462

5

(1986). The RFC represents "the most [an individual] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a). It is an administrative finding, not a medical opinion. 20 C.F.R. § 404.1527(e)(2). The RFC takes into account both exertional limitations and non-exertional limitations. "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

The term "repetitive" was used by Sanchez's treating physician and adopted by the ALJ in the RFC. AR 27, 336. The ALJ's RFC determination is supported by substantial evidence, including Sanchez's treating physician, the orthopedic consultative examiner, and the State Agency physician. AR 248-52, 253-56, 326-49. The RFC assessment precludes Sanchez from performing repetitive activities with the upper extremities, repetitive bending and stooping, and repetitive gripping and grasping activities with the right upper extremity. AR 27. The assessment was sufficiently clear.[2] Sanchez-Rios has not identified any inconsistency between her RFC and the ALJ's finding at step five of the sequential analysis. The ALJ did not err.

### 4. Hypothetical

Sanchez-Rios argues that the ALJ's hypothetical was vague because he did not define what "repetitive" means in terms of work activity. JS 3, 8.

Sanchez's attorney, not the ALJ, asked the VE a hypothetical using the term "repetitive." AR 66. The VE understood the hypothetical and did not request clarification. AR 66-67. The job identified by the VE takes into account the restrictions in the hypothetical. *Id.* The counter clerk job is light, unskilled work with a SVP of 2; the gross and fine manipulation is classified as occasional, and it affords a sit/stand option. *Id.* The ALJ did not err.

---

[2] The term "repetitive" is used in the Dictionary of Occupational Titles. *E.g.*, Assembler, Small Products I, No. 706.684-022 (describing repetitive tasks such as positioning parts in specified relationship to each other; and fastening parts together by hand, hand tools or power tools); Assembler, Motor Vehicle, No. 806.684-010 (similar).

**E.     Credibility**

Sanchez-Rios argues that the ALJ erred "in failing to provide any discussion of [Sanchez's] credibility and subjective symptoms." JS 8-9.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' 'Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.'" *Id.* (citations omitted); *Bunnell*, 947 F.2d at 343.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between

a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ erred in failing to make any findings as to Sanchez's credibility. The ALJ's decision relied exclusively on medical evidence. AR 28-29. The Commissioner argues that the following sentence could be construed as a finding: "With some benefit of the doubt, this opinion is credited with controlling weight." JS 10; AR 29. The opinion being discussed in that portion of the decision is Dr. Capen's medical opinion, not Sanchez's credibility. The Court does not construe this sentence as giving Sanchez the benefit of the doubt.

The Commissioner argues that any error was harmless because the ALJ's decision "contained the most restrictive limitations supported by the objective medical evidence." JS 10. Lack of objective medical evidence to support subjective pain allegations may be considered but would not be sufficient alone to discount a claimant's credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The question of whether Sanchez has alleged greater limitations than the RFC is a close one. When asked whether she felt able to work, Sanchez responded: "Well, I don't know. I'm not sure." AR 85. The ALJ asked what she felt would keep her from working. Sanchez responded, "Well, I think bending, lifting, walking for long periods, carrying." *Id.* On the other hand, Sanchez testified she did not think she could work a full-time job, eight hours per day and five days per week. *Id.* In addition, Sanchez testified she could lift no more than five pounds. AR 80-81. Therefore, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," and the error is not harmless. *Stout v. Comm'r of the Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). It is for the ALJ to weigh the evidence and make a credibility determination. A district court is constrained to review the reasons that the ALJ asserts for his or her decision. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Accordingly, the Court remands this matter for consideration of Sanchez's credibility.

### IV.
### **ORDER**

IT IS HEREBY ORDERED that the matter is remanded to the Commissioner for proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 28, 2011

*Alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge